**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BIDI VAPOR, LLC, | |
| Plaintiff, | Civil Action No.: 21-cv-01430 |
| v. | Judge Charles P. Kocoras |
| VAPERZ LLC, OEM PARTNERS LLC and VAPERZ ENTERPRISE LLC, | Magistrate Judge M. David Weisman |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR**
**<u>PRELIMINARY INJUNCTION</u>**

Plaintiff, BIDI Vapor, LLC, ("BIDI" or "Plaintiff"), submits this Memorandum in support of its Motion for Entry of a Preliminary Injunction, (the "Motion").

# TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION AND SUMMARY OF ARGUMENT | 1 |
| II. | STATEMENT OF FACTS | 1 |
| | A. Plaintiff's BIDI® Stick Products | 1 |
| | B. The FDA's Regulatory Structure | 2 |
| | C. Defendants' False Advertising and Unlawful Business Practices | 3 |
| III. | ARGUMENT | 5 |
| | A. Standard for a Preliminary Injunction | 5 |
| | B. Plaintiff Will Likely Succeed on the Merits | 6 |
| |    i. *Plaintiff Is Likely to Succeed on Its False Advertising & Unfair Competition Claim* | 6 |
| |    ii. *Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim* | 8 |
| | C. BIDI is Entitled to a Presumption of Irreparable Harm | 8 |
| | D. The Balancing of Hardships and The Public's Interest in Truthful Advertising Weigh in Plaintiff's Favor | 9 |
| | E. Plaintiff is Entitled to an Order Recalling the MNGO Stick | 10 |
| IV. | A BOND SHOULD SECURE THE INJUNCTIVE RELIEF | 10 |
| V. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Cases

*Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6 (7th Cir. 1992) ........................................................ 5

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 U.S. Dist. LEXIS 6531 (N.D. Ill. May 15, 2001) ................................................................................................. 5

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585 (AJN), 2015 U.S. Dist. LEXIS 113309 (S.D.N.Y. Aug. 26, 2015) ................................................................. 10

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) ................................ 9

*Coca-Cola Company v. Tropicana Products, Inc.,* 690 F.2d 312 (2nd Cir. 1982) ............................... 7

*Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375 (7th Cir. 2018) ........................................................ 6

*Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456 (7th Cir. 2000) ............................................... 6

*Elorac, Inc. v. Henson*, No. 16 C 11522, 2017 U.S. Dist. LEXIS 35229 (N.D. Ill. Mar. 13, 2017) .... 9

*Genderm Corp. v. Biozone Labs.*, No. 92 C 2533, 1992 U.S. Dist. LEXIS 13521 (N.D. Ill. Sep. 2, 1992) ............................................................................................................................... 7, 10

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411 (4th Cir. 1999) .................................... 11

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813 (7th Cir. 1999) .................................................... 6, 7

*M-3 & Assocs. v. Cargo Sys.*, No. 3:99-CV-547 AS, 2004 U.S. Dist. LEXIS 6605 (N.D. Ind. Mar. 18, 2004) ........................................................................................................................... 7

*Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916 (N.D. Ill. June 11, 2015) ........................................................................................ 9

*Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897 (N.D. Ill. 2015) ................................ 11

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111 (4th Cir. 2011) ........................................... 9

*Rathmann Grp. v. Tanenbaum,* 889 F.2d 787 (8th Cir. 1989) ............................................................ 10

*Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446 (S.D.N.Y. 2011) ................................. 9

*Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500 (7th Cir. 2009) 6, 7

*Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567 (N.D. Ill. 1994) ...................................................... 8

*Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) ....................................................... 5, 6

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ......................................................... 9

Statutes

15 U.S.C. § 1118 ................................................................................................................................... 10

21 U.S.C. § 321(rr) ................................................................................................................................. 2

21 U.S.C. § 331 ....................................................................................................................................... 3

21 U.S.C. § 387 ....................................................................................................................................... 2

21 U.S.C. § 387a(b) ................................................................................................................................ 2

21 U.S.C. § 387c ..................................................................................................................................... 3

21 U.S.C. § 387f(d) ................................................................................................................................. 3

Consolidated Appropriations Act, 2021 ................................................................................................. 8

Fed. R. Civ. P. 65(c) ............................................................................................................................. 11

Regulations

81 Fed. Reg. 28,973 (May 10, 2016) ...................................................................................................... 3

**MEMORANDUM OF LAW**

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff brings this action against Defendants for false advertising under 15 USC § 1125(a)(1) of the Lanham Act and violation of the Illinois Uniform Deceptive Trade Practices Act.  As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling an electronic nicotine delivery system (ENDS) product that directly competes with Plaintiff's premium BIDI Stick, called the MNGO Stick beginning in 2020 ("MNGO Stick"). *See Declaration of Niraj Patel in Support of Plaintiff's Motion for Preliminary Injunction* ("*Patel Dec.*"), ¶¶ 5-6.  The packaging for the MNGO Stick and the mngostick.com website ("MNGO Website") claim that the MNGO Stick contains six percent (6%) nicotine, while lab studies conducted by Plaintiff prove that MNGO Sticks contain no more than four percent (4%), in violation of not only the Lanham Act and Illinois State law, but also the TCA.  *Patel Dec*. ¶¶ 6-10; *see also Declaration of Azim Chowdhury in Support of Plaintiff's Motion for Preliminary Injunction* ("*Chowdhury Dec.*"), ¶¶ 6-7.  Moreover, Defendants have marketed the MNGO Stick as having the same amount of e-liquid and the same quantity of flavors as the BIDI stick, but the MNGO Stick is sold at prices up to 43% lower than the BIDI Stick. *Patel Dec*. ¶¶ 11-17.  As a result of Defendants' patently false statements on packaging and in advertisements, wholesalers and retailers are choosing to carry MNGO Stick over BIDI Stick, thereby directly diverting sales from BIDI to Defendants. *Patel Dec*. ¶ 18.

II.  **STATEMENT OF FACTS**

   A.  **Plaintiff's BIDI® Stick Products**

BIDI is a leading developer and marketer of premium, eco-friendly, innovative ENDS and vaping products. *Patel Dec.* ¶¶ 2-3. BIDI's most successful and innovative ENDS product is BIDI Stick, a pre-filled, revolutionary e-liquid tank equipped with a fully charged battery and

1

Class A nicotine for adult smokers. *Patel Dec*. ℙ 4. With a high-quality aluminum frame and eleven (11) flavors to choose from, the BIDI Stick delivers consistent flavor and a satisfying vaping experience ("BIDI Stick"). *Id.* BIDI uses only the highest quality materials and processes in making the BIDI Stick to meet or exceed U.S. requirements and standards. *Id.* Prior to Defendants' introduction of its own ENDS product, MNGO Stick, BIDI's BIDI Stick was the only disposable vape product on that market that offered a nicotine level of 6%, 1.4ml of e-liquid and 11 flavors. *Patel Dec*. ℙ 12.

### B. The FDA's Regulatory Structure

The Family Smoking Prevention and Tobacco Control Act (TCA) was adopted on June 22, 2009, and amended the Food, Drug and Cosmetic Act (FDCA) to give the U.S. Food and Drug Administration (FDA) authority to regulate the "manufacture, marketing, and distribution of tobacco products." Pub. L. No. 111¬31, § 3(1), 123 Stat. 1776 (2009), *codified at* 21 U.S.C. § 387 *et seq*.; *see also Chowdhury Dec.*, ℙ 3. For purposes of the TCA, the term "tobacco product" is defined to mean, in pertinent part, "any product made or derived from tobacco that is intended for human consumption, including any component, part, or accessory of a tobacco product." 21 U.S.C. § 321(rr); *see also Chowdhury Dec.*, ℙ 4. The FDA was initially charged under the TCA with regulating "all cigarettes, cigarette tobacco, roll-your-own tobacco, and smokeless tobacco." In addition, it was given authority to regulate in the future "any other tobacco products that [the Agency] by regulation deems to be subject to this subchapter." 21 U.S.C. § 387a(b); *see also Id.*

FDA's so-called "Deeming Rule" was published on May 10, 2016 and became effective 90 days later on August 8, 2016. Overall, the Deeming Rule subjects all products that meet the definition of "tobacco product" (except "accessories" of deemed products), including ENDS products that contain tobacco-derived ingredients (e.g., nicotine), to virtually all of the TCA's requirements. *See* Deeming Tobacco Products To Be Subject to the Federal Food, Drug, and

2

Cosmetic Act, as Amended by the Family Smoking Prevention and Tobacco Control Act, 81 Fed. Reg. 28,973, at 28,975 (May 10, 2016); *see also Chowdhury Dec.*, ¶5. This includes, among other things, prohibiting the sale of misbranded tobacco products, and imposing advertising restrictions on the sale and distribution of tobacco products. *See* 21 U.S.C. § 387c, 387f(d); *see also Id.*

Pursuant to Section 903(a)(1) of the TCA (21 U.S.C. § 387c(a)(1)), a tobacco product is misbranded if, among other things, its labeling (including packaging) is false or misleading in any particular. *See Chowdhury Dec.*, ¶6. A tobacco product is also misbranded under Section 903(a)(7)(A) of the TCA (21 U.S.C. § 387c(a)(7)(A)) if, in the case of any tobacco product distributed or offered for sale in any State, its advertising is false or misleading in any particular. *Id.* The misbranding of any tobacco product in interstate commerce, and the introduction or delivery for introduction into interstate commerce of any tobacco product that is misbranded, are prohibited acts, pursuant to Sections 301(a) and (b) of the FDCA (21 U.S.C. § 331(a), (b)). *Id.*

Inaccurate nicotine content on an ENDS label or advertising would be both false and misleading, and renders a product misbranded. FDA has enforced recall actions against ENDS manufacturers for products that contain nicotine concentrations that are different from that indicated on the label. *Chowdhury Dec.*, ¶ 7.

### C. Defendants' False Advertising and Unlawful Business Practices

Defendants began to manufacture, market, distribute and sell a similar, competing ENDS product, called the MNGO Stick in 2020. *Patel Dec*. ¶¶ 5-6. The packaging for the MNGO Stick and the MNGO Website claim that the MNGO Stick contains six percent (6%) nicotine. *Id.* at ¶ 6.

Concerned about the competition posed by Defendants' products, BIDI retained Labstat International, Inc ("Labstat"), a globally recognized analytical laboratory dedicated to the

research, testing and analysis of products containing nicotine, to test whether the statements on the MNGO Stick packaging and in marketing, promotion and advertisements for the MNGO Stick that its e-liquid contains six percent (6%) nicotine are false. *Id.* at ¶¶ 7-10. On or about February 11, 2021, BIDI received a copy of the Labstat test results which confirmed that Defendants' MNGO Sticks that were tested (i.e., MNGO Blueberry Mango, MNGO Iced Banana and MNGO Strawberry Mango – all claiming 6% nicotine) contain significantly less than the advertised six percent (6%) nicotine ("Labstat Report"). *Id.* In fact, each of the MNGO Sticks that were tested for the Labstat Report contain less than four percent (4%) nicotine, with average nicotine levels of between 3.06% to 3.43%. *Id.* at ¶ 10.

The MNGO Stick directly competes with the BIDI Stick in several ways. *Patel Dec*. ¶¶ 11-17. First, similar to the BIDI Stick, Defendants' MNGO Stick is also marketed, promoted and advertised as containing 6% nicotine. *Id.* at ¶ 6. Second, both the BIDI Stick and the MNGO Stick have the same amount of e-liquid (both 1.4ml). *Id.* at ¶¶ 11-12. Third, both the BIDI Stick and the MNGO Stick are available in eleven (11) flavors. *Id.* Fourth, MNGO Stick is sold to consumers for as low as $8.99, whereas BIDI Stick is generally sold for $12.99 to $15.99. *Id.* at ¶¶ 14-17. Finally, MNGO Stick and BIDI Stick are sold side-by-side by many of the same retailers, such as Circle K, which has nearly 7,200 stores in North America, as well as by many of the same wholesalers, such as H.T. Hackney, which according to its own website (https://www.hthackney.com) is "one of the largest wholesale distributors in the United States". *Id.* at ¶ 13.

Accordingly, consumers will choose the MNGO Stick over the BIDI Stick since MNGO Stick is falsely marketed as (1) containing the same level of 6% nicotine as BIDI Stick, (2) containing the same 1.4ml of e-liquid as BIDI Stick, (3) the same number and a similar variety of

4

flavors as the BIDI Stick. Perhaps most significantly, the MNGO Stick is priced substantially less (in some instances at an approximate 43.7% discount) than the BIDI Stick. *Id.* at ¶¶ 6, 11-17.

Moreover, as a result of the price disparity between the MNGO Stick and the BIDI Stick, and the incorrect belief that the MNGO Stick contains the same level of nicotine as the BIDI Stick due to Defendants' false statements and advertising to that effect, wholesalers and retailers are choosing to carry MNGO Stick over BIDI Stick, thereby directly diverting sales from BIDI to Defendants. *Id.* at ¶¶ 17-18.

### III. ARGUMENT
#### A. Standard for a Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 U.S. Dist. LEXIS 6531, at *3 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what

the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id*. The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### B. Plaintiff Will Likely Succeed on the Merits
#### i. Plaintiff Is Likely to Succeed on Its False Advertising & Unfair Competition Claim

To prevail on a false or deceptive advertising claim under 15 USC § 1125(a)(1), a plaintiff must show that (1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999)). False statements under the Lanham Act fall into two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that are literally true or ambiguous, but convey a false impression or mislead in context. *Hot Wax, Inc*. 191 F.3d at 820; *see also Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009). A literally false statement will necessarily deceive consumers, so extrinsic evidence of actual consumer confusion is not required. *Id*.

"A 'literal' falsehood is bald-faced, egregious, undeniable, over the top. ... The proper domain of' 'literal falsity' as a doctrine that dispenses with proof that anyone was misled or likely to be misled is the patently false statement that means what it says to any linguistically

6

competent person." *Schering-Plough* 586 F.3d at 512. Here, Defendants' packaging for the MNGO Stick and marketing, promotion and/or advertisements for MNGO Stick, including on the MNGO Website claim that the MNGO Stick contains six (6%) percent nicotine, but the Labstat Report unequivocally shows that MNGO Sticks contain less than four percent (4%) nicotine, with average nicotine levels of between 3.06% to 3.43%. *See Genderm Corp. v. Biozone Labs.*, No. 92 C 2533, 1992 U.S. Dist. LEXIS 13521, at *37 (N.D. Ill. Sep. 2, 1992) ("Misrepresentations as to the contents of a product are actionable under the Lanham Act.") (citing *Coca-Cola Company v. Tropicana Products, Inc.,* 690 F.2d 312, 318 (2nd Cir. 1982) (false visual demonstration suggesting that orange juice contained only fresh-squeezed, unprocessed juice actionable because it is "clearly a misrepresentation as to that product's inherent quality or characteristic")). Accordingly, Defendants' commercial claims about the level of nicotine in the MNGO Stick are patently false. To any "linguistically competent person", the statements mean that the MNGO Stick has the same level of nicotine as the BIDI Stick, when in fact, the MNGO Stick has anywhere from two percent (2%) to three percent (3%) less. *Patel Dec*. ¶¶ 6-10. Because Defendants' statements regarding the MNGO Products are literally false, Plaintiff need not prove that anyone was actually deceived or likely to be deceived by Defendants' packaging and advertising.

BIDI must also show that "it has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself or by a loss of goodwill." *M-3 & Assocs. v. Cargo Sys.*, No. 3:99-CV-547 AS, 2004 U.S. Dist. LEXIS 6605, at *13-14 (N.D. Ind. Mar. 18, 2004) (citing *Hot Wax*, 191 F.3d at 819.). "Thus, [BIDI] need not prove an actual calculable injury, but may succeed by simply establishing a likelihood of injury." *Id*. Here, BIDI was the first and only ENDS product in the market to six (6%) percent nicotine prior to the introduction

of Defendants' MNGO Stick. Now, MNGO Stick, which is sold side-by-side with BIDI Stick, is priced at a nearly 44% discount, contains the same amount of e-liquid, and is also available in eleven (11) flavors. *Patel Dec.* ¶ 12. Accordingly, there is no question that consumers will choose to purchase the MNGO Stick instead of the BIDI Stick, on the basis that they (falsely) believe that cheaper MNGO Stick is equivalent to the BIDI Stick. *Id*. at ¶¶ 11, 13, 16. Moreover, since some of BIDI's own wholesalers and retailers have chosen to carry MNGO Stick instead of BIDI Stick based on the price discrepancy, BIDI has already been harmed and will continue to be harmed since there is more MNGO Sticks available in the marketplace. *Id*. at ¶ 18.

    ii. <u>Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practices claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). Because Plaintiff has established a likelihood of success on the merits of its 15 USC § 1125(a)(1) claim against Defendants (supra), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

**C. BIDI is Entitled to a Presumption of Irreparable Harm**

On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or

(d) of section 1125 of this title. *A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order*.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021).

Accordingly, since BIDI has established that it is likely to succeed on the merits of its claims under 15 U.S.C. § 1125(a), BIDI is entitled to a presumption of irreparable harm.

### D. The Balancing of Hardships and The Public's Interest in Truthful Advertising Weigh in Plaintiff's Favor

As established herein, Defendants' claims and advertising are literally false. Defendants cannot assert an equitable interest in perpetuating false claims. *See, e.g CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 149 (E.D.N.Y. 2011) ("Defendants are unable to assert an equitable interest in continuing a false advertising campaign"); *Reckitt Benckiser Inc. v. Motomco Ltd.*, 760 F. Supp. 2d 446, 456-57 (S.D.N.Y. 2011) (noting a party cannot "assert an equitable interest in the perpetuation of an advertising campaign that is literally false"). Furthermore, Defendants have "no right to make false statements in [their] advertising, and enjoining [them] from engaging in unlawful behavior is no hardship at all." *Mkt. Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, No. 14 C 4957, 2015 U.S. Dist. LEXIS 75916, at *90 (N.D. Ill. June 11, 2015).

"False advertising disserves the public interest in any context." *Elorac, Inc. v. Henson*, No. 16 C 11522, 2017 U.S. Dist. LEXIS 35229, at *15 (N.D. Ill. Mar. 13, 2017); *see also*, *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 127 (4th Cir. 2011) ("the public interest heavily favors injunctive relief," as "it is self-evident that preventing false or misleading advertising is in the public interest in general."). Also, as indicated in Section III (B).(i) supra.,

BIDI has been injured as a result of the false statement by direct diversion of sales. *Patel Dec*. ¶¶ 16-18.

### E. Plaintiff is Entitled to an Order Recalling the MNGO Stick

It is well within this Court's discretion to grant Plaintiff's request to "recall and deliver up for destruction" any and all MNGO Sticks available in the market. *See* 15 U.S.C. § 1118. Here, Defendants' statements on its packaging and on the MNGO Stick Website that the MNGO Stick contains six percent (6%) nicotine are intentionally and patently false. Since MNGO Stick is sold at prices up to 43% less than the BIDI Stick, and prior to the introduction of Defendants' MNGO Stick BIDI was the first and only ENDS product in the market to six (6%) percent nicotine BIDI has begun to lose and stands to continue to lose a significant amount of its business the Defendants' based on Defendants' patently false statements about the contents of its product. Further, since inaccurate nicotine content on an ENDS label or advertising renders a product misbranded under FDA rules and as indicated *supra*, the FDA has initiated recall actions against ENDS manufacturers specifically where it has identified such false statements, this is the type of situation in which the Court is justified in ordering a recall. *See e.g. Genderm Corp.*, 1992 U.S. Dist. LEXIS 13521, at *9 (Ordering a defendant to recall all falsely labeled product and inserts.); *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585 (AJN), 2015 U.S. Dist. LEXIS 113309, at *14 (S.D.N.Y. Aug. 26, 2015) (Ordering the removal of intentionally false and misleading packaging from store shelves despite the expense it may impose on Defendant); *see also Chowdhury Dec.*, ¶ 7.

### IV. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir.

1999); *see also* Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of false and deceptive advertising, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). *See, e.g.*, *Monster Energy Co. v. Chen Wensheng*, 136 F. Supp. 3d 897, 910-11 (N.D. Ill. 2015).

## V. CONCLUSION

In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter an Order for Preliminary Injunction in the form submitted herewith.

DATED: April 8, 2021

Respectfully submitted,

By: */s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
keith@vogtip.com
KEITH VOGT, LTD.
111 West Jackson Boulevard, Suite 1700
Chicago, Illinois 60604
Telephone: 312-675-6079

Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, New York 10165
Telephone: 212-292-5390

***ATTORNEYS FOR PLAINTIFF***

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document was electronically filed on April 8, 2021 with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all registered attorneys of record. In addition, the following party will receive service by electronic mail as follows:

David L. Atallah
Carlson, Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, MI 48009
DAtallah@cgolaw.com

*/s/ Keith A. Vogt*
Keith A. Vogt