# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **BIDI VAPOR, LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **VAPERZ LLC, OEM PARTNERS LLC, and VAPERZ ENTERPRISE LLC,** <br><br> Defendants. | Civil Action No. 21-cv-01430 <br><br> Judge Charles P. Kocoras <br><br> Magistrate Judge M. David Weisman |

## DEFENDANTS' RESPONSE AND MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

Defendants Vaperz LLC, OEM Partners LLC, and Vaperz Enterprise LLC (collectively, "Vaperz"), through their undersigned counsel, submit this Response and Memorandum in opposition to Plaintiff's Motion for Entry of a Preliminary Injunction and Memorandum in Support.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

   I.  Introduction ..................................................................................................................1

   II.  Factual Background ....................................................................................................2

   III. Analysis .......................................................................................................................4

        A. Testing ................................................................................................................5

        B. Competition .......................................................................................................8

        C. Equities ..............................................................................................................9

        D. Extreme Remedy ...............................................................................................9

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Arjo, Inc. v. Handicare USA, Inc.*,
   No. 18 C 2554, 2018 U.S. Dist. LEXIS 183037 (N.D. Ill. Oct. 25, 2018)..........................8

*Bd. of Forensic Document Exam'rs, Inc. v. ABA*,
   922 F.3d 827 (7th Cir. 2019) ...........................................................................................5, 7

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
   No. 14-CV-585 (AJN), 2015 U.S. Dist. LEXIS 113309 (S.D.N.Y. Aug. 26, 2015).......10

*Eli Lilly & Co. v. Arla Foods, Inc.*,
   893 F.3d 375 (7th Cir. 2018) ...........................................................................................5, 6

*Genderm Corp. v. Biozone Labs.*,
   No. 92 C 2533, 1992 U.S. Dist. LEXIS 13521 (N.D. Ill. Sep. 2, 1992).........................10

*Graham v. Med. Mut. of Ohio*,
   130 F.3d 293 (7th Cir. 1997) ..............................................................................................8

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
   191 F.3d 813 (7th Cir. 1999) ..............................................................................................5

*Ill. Republican Party v. Pritzker*,
   973 F.3d 760 (7th Cir. 2020) ..............................................................................................4

*McCoy v. Gamesa Tech. Corp.*,
   No. 11 C 592, 2012 U.S. Dist. LEXIS 38745 (N.D. Ill. Mar. 22, 2012)...........................4

*Mead Johnson & Co. v. Abbott Labs.*,
   201 F.3d 883 (7th Cir. 2000) ............................................................................................10

*Orr v. Shicker*,
   953 F.3d 490 (7th Cir. 2020) ..............................................................................................8

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
   858 F.3d 1034 (7th Cir. 2017) ............................................................................................8

*Winter v. NRDC, Inc.*,
   555 U.S. 7 (2008)................................................................................................................8

**Other Authorities** **Page**

15 U.S.C. § 1116(a) ........................................................................................................................ 9

15 U.S.C. § 1118 .......................................................................................................................... 10

15 U.S.C. § 1125(a)(1) ................................................................................................................... 5

## I. Introduction

A preliminary injunction turns the normal order of things on its head. Instead of a presumption of innocence, a preliminary injunction assumes guilt until innocence has been established. As this runs counter to the foundation of this country's judicial system, it is not surprising that the burden for a successful preliminary injunction request is a heavy one.

Here, the burden should be heavy. As an umbrella problem, Bidi does not even try to point to anything that could be construed as irreparable harm but rests its motion on competitive harm to Bidi – indeed, the type of competitive harm for which lost profit damages were designed. Under that umbrella, the test results on which Bidi relies crumble on closer inspection.

There are the three major reasons why Bidi's motion should be denied:

1. **Testing**: MNGO Stick's advertised 6% nicotine concentration is accurate under proper testing, particularly when measured against accepted tolerances for nicotine concentrations. Bidi's own product follows these conventions.

2. **Competition**: Bidi admits that it seeks a competitive advantage. This is quintessential reparable harm as Bidi will have the opportunity to show precise lost profits if it can succeed on the merits.

3. **Equities**: The public will not be harmed even if Bidi is correct that MNGO Stick has less than 6% nicotine. Moreover, testing shows Bidi's product contains the same amount of nicotine as MNGO Stick so the public will not get more nicotine from Bidi's products.

Bidi leaves too many key questions unanswered and so preliminary injunction is not the appropriate remedy. If Bidi is correct but the Court does not issue a preliminary injunction, Bidi might temporarily lose profits over the several months while discovery takes place and before Bidi has enough information to file a dispositive motion or attempt a trial win. If Vaperz is correct but the Court enters a preliminary injunction, not only would Vaperz suffer a serious and possibly permanent financial blow but Vaperz's customers would be deprived of their electronic cigarette of choice.

## II. Factual Background

The three Defendants, Vaperz LLC, OEM Partners LLC, and Vaperz Enterprise LLC (collectively, "Vaperz") are retail and wholesale sellers of an electronic cigarette ("e-cigarette") called "MNGO Stick." Vaperz does not manufacturer the MNGO Stick. [*See* Declaration of Peter White ("White Declaration"), attached as **Exhibit 1** at ¶¶ 3, 5, and 6].

MNGO Stick was first offered for sale in the United States in 2016. [*Id.* at ¶ 7]. Although Bidi tries to give the impression that it only just learned of the MNGO Stick, Vaperz has reason to believe that Bidi knew of MNGO Sticks for quite some time, and was investigating MNGO Sticks at least as of January 2021. [*Id.* at ¶ 14; Exhibit A to White Declaration].

The basis for this Motion can be summed-up as an alleged false presentation as to the 6% nicotine in the MNGO Stick. Vaperz has received information from the MNGO Stick manufacturer that confirms that MNGO Stick is a 6% nicotine product as that term is used in the market. Before addressing this data, Vaperz wants to set the context. As an initial matter, neither MNGO Stick, nor Bidi Stick, nor any other e-cigarette that claims 6% nicotine has exactly 6% nicotine. First, nicotine degrades over time and that degradation can be accelerated based on a number of factors such as heat, light, packaging, and storage conditions. [*See* Declaration of Manoj Misra, Ph.D. ("Dr. Misra Declaration"), attached as **Exhibit 2**, at ¶ 21; *see also* Declaration of Scott Creekmur ("Creekmur Declaration"), attached as **Exhibit 3**, at ¶¶ 7, 8].

In addition, the numerical units used to present a nicotine percentage can change the perceived concentration of nicotine. For example, Bidi reports its test results as milligrams over grams (mg/g). This weight-based concentration is not an incorrect way to display nicotine levels. However, it is also correct and common in the industry to determine the concentration of nicotine by volume using a milliliter format. [Dr. Misra Declaration at ¶ 10]. Significantly, Bidi itself uses a millimeter format on

its own packaging and advertising to announce nicotine content. When Bidi's test results are converted from the weight-based formulation to a volume-based format, the test result numbers show an increased amount of nicotine compared to the values presented in Bidi's test results. [*Id.* at ¶¶ 8-13, 19].

For these reasons, it is common for manufactures of e-cigarettes like MNGO Stick and Bidi Stick to list a percentage of nicotine that is somewhat higher than the actual amount; this is acceptable in the e-cigarette industry as long as the deviation is within an industry-accepted tolerance, such as 15%. [*Id.* at ¶¶ 24, 25]. Specifically, manufacturers typically strive for a nicotine percentage that is below the listed nicotine content but within 15% below it. [*Id.* at ¶ 16, 24, and 25]. Being below the stated nicotine content is important. To Vaperz's knowledge, the FDA has never instituted a recall because an e-cigarette product contains less than the advertised nicotine amount, though it has announced recalls for nicotine levels that are too high. [*See* Dr. Misra Declaration at ¶ 16; *see also* **Exhibit 4** (Example FDA announcement of product recall for "[n]icotine content higher than indicated on product label")].

With this context, the MNGO Stick is a 6% nicotine product. [*Id.* at ¶ 25]. Vaperz has asked for and received test results from a recent test of nicotine content in the MNGO Stick done by an independent laboratory called Shenzen Alpha Product Testing Co., Ltd. These results demonstrate an actual nicotine content that is only about 10% lower than the listed amount, a deviation that is less than the industry-accepted tolerance of 15%. [*Id.*] One set of tests shows a nicotine concentration of 5.37% and another a nicotine concentration of 5.38%. [*Id.* ¶¶ 8-14, 25; Exhibits B and C to Dr. Misra Declaration].

Bidi itself appears to follow these same conventions. Vaperz has tested the Bidi Stick which is also listed as a 6% nicotine product. These tests show an actual nicotine concentration of 5.47% for

the Bidi Stick, which is almost the same as that of MNGO Stick. [*See* Dr. Misra Declaration at ¶¶ 22, 23, and 25; *see also* Creekmur Declaration at ¶¶ 5, 6, and Exhibit B of Creekmur Declaration].

Both MNGO Stick and Bidi Stick (along with numerous other products) are currently working with the FDA on what is called a Premarket Tobacco Product Application ("PMTA"). A PMTA is an application seeking an FDA marketing order. Vaperz expects that MNGO Stick will receive formal approval from the FDA by September 2021. [*See* White Declaration at ¶ 10]. To date, the FDA has not registered any concern with the MNGO Stick's listed nicotine concentration. [*Id.*].

**III. Analysis**

As this Court has noted, a preliminary injunction is an extraordinary and drastic remedy – one that should not be granted unless Bidi can meet the burden of persuasion by a clear showing. *McCoy v. Gamesa Tech. Corp.*, No. 11 C 592, 2012 U.S. Dist. LEXIS 38745 at *13 (N.D. Ill. Mar. 22, 2012)(citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020)(citations omitted). Bidi cannot meet this burden for at least these reasons:

1. **Testing**: MNGO Stick's advertised 6% nicotine concentration is accurate under proper testing, particularly when measured against accepted tolerances for advertised nicotine concentrations. Bidi's own product follows these conventions.

2. **Competition**: Bidi admits that it seeks a competitive advantage. This is quintessential reparable harm as Bidi will have the opportunity to show precise lost profits if it can succeed on the merits.

3. **Equities**: The public will not be harmed even if Bidi is correct that MNGO Stick has less than 6% nicotine. Moreover, testing shows Bidi's product contains the same amount of nicotine as MNGO Stick so the public will not get more nicotine from Bidi's products.

This Response will address each point in turn.

A.  Testing[1]

To prove its false advertising claim under 15 U.S.C. § 1125(a)(1), Bidi must establish that (1) Vaperz made a materially false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) Bidi has been or is likely to be injured as a result of the false statement. *Bd. of Forensic Document Exam'rs, Inc. v. ABA*, 922 F.3d 827, 833 (7th Cir. 2019)(citation omitted).

There are two types of statements that can be at issue: literally false statements or literally true but misleading statements. *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018). A literally false statement is one that is "egregious" or "undeniable" so evidence of consumer confusion is not required. *Id.* (citations omitted). However, for a true but allegedly misleading statement, evidence of consumer confusion is necessary to prove the claim because those claims must be considered in context. *Id.*;[2] *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir. 1999).

First, Bidi cannot establish a false statement. The MNGO Stick is a 6% nicotine product as advertised. [*See* Dr. Misra Declaration at ¶¶ 7, 25]. Given the known, acceptable tolerances for products in the industry, that statement is literally true.

Next, as for the position that the 6% statement is not literally false but misleading, Bidi must present evidence of deception or consumer reliance on this alleged statement to support its burden. It has not.

As an initial matter, the fact that both Parties can produce testing results to support their claims makes Bidi's request for a preliminary injunction suspect as one would expect overwhelming

---

[1] Plaintiff's only argument regarding the Illinois UDPTA is that there is a likelihood of success because of the likelihood of success regarding the Lanham Act claim. [Dkt. No. 13, Bidi's Memorandum ("Memo"), p. 8]. Therefore, this claim must fail for the same reasons as the Lanham Act claim.

[2] Though specifically consumer surveys and "hard evidence" have not been required at the preliminary injunction stage. *Eli Lilly*, 893 F.3d at 382 (citation omitted).

evidence of false advertising to justify the extreme remedy that Bidi wants. Here, Vaperz's testing demonstrates that the MNGO Stick contains nicotine levels within industry-standard tolerances -- tolerances that the FDA defers to and that Bidi, too, follows. *See Eli Lilly*, 893 F.3d at 383 (considering the FDA's regulatory guidance in determining likelihood of success); [*see also* Dr. Misra Declaration at ¶ 18, 24]. In the industry, deviations between actual nicotine content and advertised content of around 15% are accepted. [*See* Dr. Misra Declaration at ¶ 24]. MNGO Stick's nicotine concentration was recently tested at 5.37% in one set of tests and at 5.38% in another set of tests. Thus, the actual concentration is within about 10% of the advertised amount, which is an acceptable deviation in this industry.

This adherence is reinforced by the fact that the Bidi Stick, which is also advertised as a 6% product, has an almost identical amount of nicotine, namely 5.47% for Bidi Stick versus the 5.37-5.38% for MNGO Stick. [*Id.* at ¶¶ 22, 23, and 25, Exhibits B and C to Dr. Misra Declaration; *See also* Creekmur Declaration, at Exhibit B].

While Vaperz's testing supports the accuracy of Vaperz's advertised nicotine concentration, there are a number of reasons to question whether Bidi's testing counsels a different result. [Misra Declaration at ¶¶ 19-21]. First, there is no chain of custody regarding the origin of the tested products. Although Bidi's Mr. Patel claims to have tried to order product off the MNGO website and submits a receipt for one MNGO stick from a Circle K in March of 2021, there is no evidence where or when Bidi got the tested MNGO Sticks as those sticks do not appear to be the ones identified by Mr. Patel. [*See* White Declaration at ¶¶ 12, 13]. There is also no evidence of the age of the tested MNGO Sticks, which have been on the market since 2016.

Second, Bidi makes no attempt to address the issue of known degradation of nicotine potency. [*See* Dr. Misra Declaration at ¶¶ 20, 21, and Exhibit E to Dr. Misra Declaration; *see also* Creekmur

Declaration at ¶¶ 7, 8]. This degradation can occur for many reasons, such as exposure to heat (for example in the trunk of a hot car in Florida where Mr. Patel's receipt indicates a purchase of a different MNGO Stick) and the passage of time. [*Id.*]. Bidi submits no evidence of how the tested MNGO Sticks were handled or stored prior to receipt by the testing facility.

Third, Bidi's test report showed results in a format that leads to a misleadingly low number. Specifically, Bidi presents its results in a milligram over gram format as opposed to the industry-standard volumetric, milliliter-based format. While the gram-based format in Bidi's test is one way to report a nicotine concentration, the milliliter format is also accepted and when followed would indicate a higher percentage. [Dr. Misra Declaration at ¶¶ 10, 19]. Indeed, Bidi uses the milliliter format on its own packaging. [*Id.* at ¶ 10]. If Bidi had reported the MNGO Stick's nicotine concentration using the milliliter format, its test results would have shown higher percentages. [*Id.* at ¶ 19]. Finally, Vaperz has not had the opportunity through discovery to validate Bidi's testing, something that could further undermine those results.

Bidi has yet another problem with its attempted rush to judgment – a lack of materiality. To qualify as an actionable false statement, Bidi must prove that the statement was material. *Bd. of Forensic Document Exam'rs, Inc.*, 922 F.3d at 833 (citation omitted). Notably absent from Bidi's brief and declarations is any mention of materiality. In other words, Bidi does not address whether e-cigarette purchasers care whether their product has three or six percent nicotine, or something in between. While possible, Bidi cites no evidence in support. It is also possible that e-cigarette buyers do not care much about the level of nicotine but rather base their purchase decisions on factors like taste, convenience, or price. Indeed, Bidi itself lists amount of liquid, number and variety of flavors, and price as factors in a buyer's decision. [Memo, Dkt. No. 13, at pp. 4-5.]

Finally, Bidi has not shown injury. Although it claims to have lost sales because MNGO Sticks are less expensive, it has not given the Court any support for this claim. A check of Bidi's sales numbers over the past quarter shows that sales of the Bidi Stick have increased of late. [*See* **Exhibit 5** (September 16, 2020 Bloomberg press release indicating Bidi experienced "an increase in sales of almost 44% from the previous quarter")]. Although this is not dispositive, it could indicate that MNGO Stick has not resulted in any meaningful defection of Bidi customers.

### B.     Competition

For harm, Bidi has alleged only lost sales. [Memo, Dkt. No. 13, pp. 4-5, 8-10 (claiming Bidi has been injured by "direct diversion of sales"); Patel Dec., ¶¶ 13-18]. But lost sales are reparable through damages. *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020) (citations omitted) (irreparable harm is harm "for which money compensation is inadequate"); *Arjo, Inc. v. Handicare USA, Inc.*, No. 18 C 2554, 2018 U.S. Dist. LEXIS 183037, at *27-28 (N.D. Ill. Oct. 25, 2018)(denying preliminary injunction and finding no irreparable harm when no reason money damages for lost profits not an adequate remedy for "luring business away.").

Irreparable harm is harm that "'cannot be repaired' and for which money compensation is inadequate." *Orr*, 953 F.3d at 502 (citing *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997)). Here, Bidi has not even demonstrated that it will *likely* suffer reparable lost sales to Vaperz, as it must. *Id.* (citing *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017)). A mere possibility of harm is not enough. *Id.* As the United States Supreme Court has said: "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* (citing *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008)).

Bidi has tried to skirt the irreparable harm factor by relying on a rebuttable presumption of irreparable harm after a finding of likelihood of success. 15 U.S.C. § 1116(a).[3] Here, Bidi does not have a likelihood of success so it is not entitled to the rebuttable presumption. Bidi does not make any argument beyond this "presumption" as to any alleged irreparable harm. [Memo, at pp. 8-9].

Even if the presumption applied, this does not allow Bidi to avoid addressing that factor. Vaperz has shown that Bidi sales have increased recently and Bidi has not explained this sales increase in light of the alleged competitive harm caused by MNGO Stick. [*See* **Exhibit 5**].

### C. Equities

Here, the equities and public interest both weigh against any preliminary injunction. First, even if Bidi's allegations are taken as true, there is no danger to the consuming public. Alleging consumers are getting *less* nicotine, not more, than advertised on MNGO Stick in fact could be considered by many *better* for the public. And since the Bidi Stick has almost identical nicotine content as MNGO Stick, there simply cannot be any public interest, or equity, in recalling and destroying MNGO Stick.

### D. Extreme Remedy

The relief sought by Bidi is extreme and unsupported. In fact, it seems to go beyond a change to the presentation of the nicotine amount and demands destruction of Vaperz's inventory. Bidi appears to be trying to step into the shoes of the FDA so as to effectively recall the MNGO Stick. The FDA has not initiated a recall action for MNGO Stick nor has the FDA deemed it misbranded or

---

[3] The presumption of 15 U.S.C. §1116(a) does not apply to the Illinois UDTPA claim nor does Bidi establish any irreparable harm regardless.

lodged any other objection to its advertised nicotine concentration. Moreover, MNGO Stick's PMTA Application is currently pending with the FDA.[4]

Bidi cites to 15 U.S.C. § 1118 to support its request for recall and destruction, but this section requires a violation to "have been established." There is no support for alleging destruction of articles as part of a preliminary injunction request such as here – especially given that the claims are likely to fail. The cases Bidi cites are also unpersuasive. *Church & Dwight* addressed a permanent injunction after an eight day bench trial finding liability. *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, No. 14-CV-585 (AJN), 2015 U.S. Dist. LEXIS 113309, at *2-3 (S.D.N.Y. Aug. 26, 2015). The *Genderm* case addressed a situation where the defendant had no testing or evidence to support its labeling, conceded it had made false representations, and dealt with an ingredient that had "never been used in a drug in the United States previously." *Genderm Corp. v. Biozone Labs.*, No. 92 C 2533, 1992 U.S. Dist. LEXIS 13521, at *4-7 (N.D. Ill. Sep. 2, 1992). And even there, the Court did not require destruction – only corrective advertising. *Id.,* at *9.

Finally, Bidi's proposed $5,000 bond is legally insufficient. Bidi is essentially asking this Court to allow a risk free method of removing a competitor. Since Vaperz already has extensive additional product that would be affected by the requested injunction, Vaperz asks that the Court set a high bond that would be sufficient to protect Vaperz's lost revenue in the event of an injunction. [*See* White Declaration at ¶18]; *see Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000) (citations omitted) ("[D]istrict courts should err on the high side" because an error setting too high of a bond is not serious, but setting one too low "produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond."). In that

---

[4] Vaperz objects to the Declaration of Azim Chowdhury as it contains legal opinions which should be the province of this Court. [Dkt. No. 13-1].

event, Vaperz would ask for an opportunity to present the affected sales revenue to the Court for its consideration.

| | |
|---|---|
| Dated: April 16, 2021 | CARLSON, GASKEY & OLDS, P.C. |
| | |
| | /s/ David L. Atallah |
| | David L. Atallah (Bar No. P73043) |
| | *Admitted Pro Hac Vice* |
| | Steven Susser (Bar No. P52940) |
| | *Admitted Pro Hac Vice* |
| | Timothy J. Murphy (Bar No. P77041) |
| | *Admitted Pro Hac Vice* |
| | 400 W. Maple, Suite 350 |
| | Birmingham, MI 48009 |
| | Telephone: (248) 988-8360 |
| | Email: datallah@cgolaw.com |
| | ssusser@cgolaw.com |
| | tmurphy@cgolaw.com |
| | |
| | Grant Blumenthal (Bar No. 6238437) |
| | BLUMENTHAL LAW GROUP, PC |
| | 180 N. LaSalle Street, Suite 3700 |
| | Chicago, Illinois 60601 |
| | Telephone: (312) 981-5055 |
| | Email: gblumenthal@blumenthal-law.com |
| | |
| | ATTORNEYS FOR DEFENDANTS |

**CERTIFICATE OF SERVICE**

I certify that on April 16, 2021, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all ECF registered attorneys of record.

/s/ David L. Atallah
David L. Atallah (Bar No. P73043)
*Admitted Pro Hac Vice*
Carlson, Gaskey & Olds, P.C.
400 W. Maple, Suite 350
Birmingham, MI 48009
Telephone: (248) 988-8360
Email: datallah@cgolaw.com