# EXHIBIT 1

Declaration of Peter White with Exhibit A

# DECLARATION OF PETER WHITE

I, Peter White, hereby declare as follows:

1. I am over the age of 18. The following facts are within my personal knowledge.

2. I am the manager of Vaperz LLC ("Vaperz"), Vaperz Enterprise LLC ("Vaperz Enterprise"), and OEM Partners LLC ("OEM Partners").

3. OEM Partners is a wholesaler of e-cigarette related products such as e-liquids, vaping devices, etc. Vaperz and Vaperz Enterprise have been retailers of e-cigarette related products such as e-liquids, vaping devices, etc.

4. I am aware of the lawsuit named Bidi Vapor, LLC v. Vaperz LLC, et al., 1:21-cv-01430, which is pending in the United States District Court for the Northern District of Illinois and raises claims of false advertising against Vaperz, Vaperz Enterprise, and OEM Partners based on the advertised 6% nicotine content of MNGO Stick.

5. OEM Partners purchases MNGO Stick and sells the same at a wholesale level. Meaning, OEM Partners sells the MNGO Stick within the United States to other distributors and retailers. OEM Partners buys MNGO Stick and resells MNGO Stick without altering the product or its packaging. OEM Partners does not manufacture MNGO Stick. OEM Partners does not dictate or alter the packaging of MNGO Stick.

6. Vaperz and Vaperz Enterprise have sold MNGO Stick at the retail level. Vaperz and Vaperz Enterprise have bought MNGO Stick and resold MNGO Stick without altering the product or its packaging. Vaperz has never manufactured MNGO Stick. Vaperz Enterprise has never manufactured MNGO Stick. Neither Vaperz nor Vaperz Enterprise has ever dictated or altered the packaging of MNGO Stick.

7. MNGO Stick has been available to consumers for purchase in the United States since at least March of 2016 at retail locations owned by Vaperz or Vaperz Enterprise.

8. OEM Partners began selling MNGO Stick in September of 2019.

9. Since 2016, MNGO Sticks have been advertised as a 6% nicotine product.

10. MNGO Stick is the subject of a Premarket Tobacco Product Application (PMTA) seeking to obtain a marketing order from the FDA. The application is pending and a final decision from the FDA is expected by the end of September. The FDA has not denied the application. The FDA has not registered any concern with the listed nicotine concentration either. The application is currently in a "filed" status, which, based on my understanding of the current data from the FDA, less than half of all applications have reached that phase.

11. To my knowledge, consumers have never complained about MNGO Stick or returned MNGO Stick on the basis of a lack of nicotine potency of MNGO Stick.

12. Neither OEM Partners, Vaperz, nor Vaperz Enterprise have ever directly sold MNGO Stick to Circle K.

13. I am aware of Mr. Patel's declaration attached to Bidi's Motion for Preliminary Injunction. To my knowledge, the alleged order made on the MNGO website was never filled.

14. I received the attached communication (**Exhibit A**) on January 7, 2021 from a customer in which Bidi compared its product to MNGO Stick and disparaged MNGO Stick. My understanding is that the communication was sent prior to January 7, 2021. Of course, I disagree with the many disparaging statements in the communication.

15. I have reason to believe Bidi was aware of MNGO Stick before January 7, 2021, beginning at least around November of 2020. I believe Bidi was aware of MNGO even earlier than that given

how long MNGO has been on the market and the fact companies in this industry are aware of the other products on the market.

16. I have reviewed a report from Legend Technical Services, Inc., which reports the nicotine concentration of a number of products competitive with MNGO Stick including the Bidi Stick. I sent these products for testing directly to Legend Technical Services and I ordered Legend Technical Services to conduct the tests necessary to produce the report. The products sent to Legend Technical Services were in their original packaging. The report from Legend Technical Services indicates that there are other 6% products on the market, such as the POSH 6% product and the VGOD Stig 6% product, other than the Bidi Stick and MNGO Stick.

17. The manufacturer of MNGO Stick provided me with portions of the manufacturing specification sheets attached to my counsel's briefing.

18. As of the signing of this declaration, OEM Partners has paid for and is expecting to receive a shipment of over 100,000 MNGO Sticks from the manufacturer in the coming days. Further, OEM Partners has ordered and is responsible for purchasing approximately 500,000 additional MNGO Sticks. The average retail price of each stick is about $9.99.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this __15th__ day of April 2021 at __Frankfort, IL_____.


_____
Peter White

# EXHIBIT A

BIDI VAPOR, LLC
401 N WICKHAM RD – STE 130
MELBOURNE, FLORIDA 32935
TOLL-FREE 1-833-367-2434
www.bidivapor.com
sales@bidivapor.com

# Here's Why Regulatory Compliance is Important to Your Business

Retailers should be proactive in ensuring that what they are selling in their stores strictly adheres to government regulations. From the packaging to labeling to marketing, it is best to check your brand partners' commitment to being a good corporate citizen and sharing the same vision as yours.

Your business is important for us. As one of our partners, we advise you NOT to sell products that violate the government's regulations. Selling non-compliant products comes with consequences ranging from heavy fines to substantial risk of injury to consumers and loss of business due to loss of market goodwill.

At Bidi ™ Vapor, we have shown our responsible business practices and marketing efforts through our successful submission of the PMTA. It only proves that we comply with the FDA regulations and uphold certified manufacturing processes. Thus, we want our partners to share the same responsibilities to strengthen our partnership and brand.

## FDA Packaging and Labeling Requirements

The FDA requires label warnings to meet specific formatting to ensure visibility on the package. Some of the labeling and packaging requirement are as follows:

- **Proper label with accurate statements on contents**

    To give the consumers and retailers an idea about the product, the name of the tobacco product manufacturer and exact quantity percentage or measurement of the product ingredients should be displayed on the packaging.

    The Bidi$^{TM}$ Stick is complete with accurate statements of the quantity of its contents in terms of weight, measure, and numerical counts.

- **No top-parity claims and comparative information with other e-cigarette products**

    In an industry like vaping, manufacturers, retailers, and wholesalers should be responsible for incorporating appropriate product descriptions that are not misleading and do not have extensive claims. Thus, vape manufacturers should not make any claims on being the "best" and "most superior" product and delivering X number of puffs much longer than their competitors.

    For instance, the MNGO Stik should not use descriptions like "up to 500 puffs" because this is a manifestation of top-parity claims without backing it up with tests and certifications.

    

    The Bidi™ Stick, on the other hand, only displays the ingredients, nicotine concentration, contact number, Poison Control Number, and proper health warnings to fully inform all its consumers and partners.

- **Warning sign placement and size**

    The FDA requires all manufacturers of e-cigarette nicotine products to place proper warnings on its product packaging to warn the consumers about its addictive properties. Based on the guidance, the principal display panels should be about 30 percent, and the font size should be at least 12-point font size in

Helvetica bold, Arial bold, or other similar fonts. In addition to that, it should be capitalized, centered, and punctuated. This is necessary to ensure that the warning statements are clear and visible underneath the plastic wrapping.

Here is an example of a non-compliant and compliant products:

 

When you look at MNGO Stick's warning, it does not cover an area of at least 30% of the packaging. Meanwhile, the Bidi™ Stick made sure that the warning sign is visible to consumers by covering at least 30% of the font packaging and increasing the size of "WARNING."

- **Use of attractive elements on the packaging**

Irresponsible marketing of vapor products plays a vital role in teen vape use epidemic in the United States. Thus, Bidi™ Vapor made sure that the Bidi™ Stick does not display kid-friendly elements like cartoons, food, candy, and fruity

images. We understand the impact of such imagery on the youth, so we make sure that there are no words assiated with youth preferences. Our responsible marketing efforts and ensure that our materials do not have underage representations.

Electronic nicotine products with packaging that consists of fruity images and colorful elements can attract the youth. This type of labeling and packaging only brings the possibility that the unintended market—the youth—will get enticed to it.




### Are you selling the right product in your stores?
The PMTA is laid out to protect the public and prevent underage use of nicotine related products. The comprehensive application determines a vape brand's ability to ensure product integrity and adherence to the law. Thus, retailers must be careful in selling

products that manifest irresponsible marketing as it can significantly contribute to the rise of teenage vaping and pose potential dangers to the consumers. Vigilance and taking the extra step to investigate brand reputation can have drastic effects on the store's credibility. Protect your store and your customers by only allowing products that are fully compliant with the rules and regulations surrounding the vaping industry.